```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                          :
                                                :     17 Civ. 2005 (PAE)
BLAIR VENTURES, LLC,                            :
                                                :     OPINION & ORDER
                        Debtor.                 :
------------------------------------------------------------------X
------------------------------------------------------------------X
                                                :
BLAIR VENTURES, LLC,                            :
                                                :
                        Appellant,              :
        -v-                                     :
                                                :
FAMOUS RESTORATION INC.,                        :
                                                :
                        Appellee.               :
------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

In this case, a debtor, Blair Ventures LLC ("Blair"), seeks review of a Bankruptcy Court order granting a motion by a creditor, Famous Restoration, Inc. ("Famous") to hold the debtor in contempt for failing to comply with a 2012 Bankruptcy Court order (the "2012 Order"). The Court here holds that the 2012 Order was, in pertinent part, ambiguous. Therefore, any violation of it cannot support a finding of civil contempt. The Court accordingly vacates the order of contempt and remands this matter to the Bankruptcy Court for further proceedings.

I.      **Procedural History**[1]

    A.      **The 2012 Proceedings in Bankruptcy Court**

---

[1] The Court draws this history from the docket in the Bankruptcy Court, *In re Blair Ventures*, No. 12-10612 ("Bankr. Dkt."), and from the parties' submissions to this Court.

In February 2012, Blair Ventures LLC filed for Chapter 11 protection. Bankr. Dkt. 1. In March 2012, the Office of the United States Trustee moved in Bankruptcy Court for an order converting the case to a Chapter 7 case, or, in the alternative, for an order dismissing the case. *See* Bankr. Dkt. 38 (the "Order of Dismissal"). The motion to dismiss was ultimately granted on August 29, 2012, as discussed below.

In June 2012, the Bankruptcy Court granted Blair's secured creditor, Terrastone Audubon L.P., relief from the automatic bankruptcy stay to enable it to pursue a foreclosure action against a building Blair owned at 440-450 Audubon Avenue in Manhattan. *See* Order of Dismissal at 1.

On August 9, 2012, however, Blair entered into a contract for sale of the Audubon Avenue building for a purchase price of $7,810,000, with a closing date set for August 29, 2012. *Id.* The proceeds of that sale were to be put towards paying "all known creditors, secured, unsecured and priority, as well as all quarterly fees to the Office of the United States Trustee." *Id.* at 2.

On August 29, 2012, to facilitate the sale of the Audubon Avenue building, the Bankruptcy Court held a hearing, at which it considered a motion to dismiss the Chapter 11 proceeding. The debtor, the secured creditor, and the U.S. Trustee all consented to dismissal of the Chapter 11 case, and agreed to a proposed schedule for payments in specified amounts to each of Blair's creditors. *See* August 29, 2012 Hr'g. Tr., Bankr. Dkt. 56-2, at 4–5 ("2012 Hr'g. Tr."); 2012 Order at 2. At the hearing, the U.S. Trustee explained its support of the building sale and the consequent dismissal of the chapter 11 proceeding: "We accept counsel's representations that all creditors will be paid in this case and that the debtor—the debtor's principal may or may not ultimately get something out of this." 2012 Hr'g. Tr. at 6.

At the conclusion of the hearing, the Bankruptcy Court (Peck, *J.*) granted the Order of Dismissal. Because the essential question here concerns the debtor's compliance with that order, the Court sets out the Order's operative text in full:

> NOW, THEREFORE, IT IS ORDERED:
> 1. The Motion is GRANTED.
> 2. Debtor shall proceed to closing and shall pay all known creditors, secured, unsecured and priority in full in accordance with the proposed schedule of payments annexed as EXHIBIT A.
> 3. Said payments shall [be]made within thirty days of the date hereof and upon said payment the Debtor shall file with this Court an affidavit of compliance thereof.
> 4. The Debtors' Chapter 11 case is hereby DISMISSED WITH PREJUDICE for a period of one year and the Court shall retain jurisdiction to enforce the terms hereof.

Order of Dismissal at 2.

Exhibit A to the Order of Dismissal, in turn, contains a schedule of payments divided into two categories: "TO BE ESCROWED" and "TO BE PAID." See *id.*, Ex. A at 1. The first, labeled "TO BE ESCROWED," is itself further divided into two sub-categories. Under the "to be escrowed" heading, the schedule first lists *"Mechanics Liens"* by the "Creditor" name, date filed, index number, and amount. *Id.*[2] Among the mechanics' liens listed is a lien in the name of "Famous Restoration Inc." in the amount of $56,636.50. Also under the escrowed heading, the schedule lists *"ECB Violations/Fines,"* with the order date, the violation number, and the amount; for each of the ECB Violations/Fines, the "Creditor" is listed as the NYC Department of Finance. *Id.* at 1–2.

---

[2] A mechanics lien, under New York law, grants a "contractor, subcontractor, laborer, materialman, landscape gardener," or several other similar tradespeople, who "performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor," "a lien for the principal and interest, of the value, or the agreed price, of such labor." N.Y. Lien Law § 3.

The second category on the Exhibit A schedule is labeled "TO BE PAID." *Id.* at 2. This category, too, is further subdivided. First, the schedule lists "***Past Due Taxes, Rent Stabilizatoin*** [sic]***, Elevaotr*** [sic]***, Emergency Repair etc.***" *Id.* The "Creditor" for each of these entries is, again, the NYC Deptartment of Finance. *Id.* at 2–3. The "TO BE PAID" category then lists "***Water and Sewer Charges***," for which the "NYC DEP" is listed as the "Creditor." *Id.* at 4. Finally, the "TO BE PAID" category includes "***Additional Charges***," for which a "Description" is given. *Id.* These include the amount due to Terrastone Audubon as "noteholder," the receiver's fees, a broker's fee, legal fees, taxes, title fees, and the U.S. Trustee's quarterly fee. *Id.*

### B. Famous Restoration's 2016 Motion

On November 11, 2016, Famous filed a motion in the Bankruptcy Court, asking that that Court (a) interpret the Dismissal Order to compel immediate payment to Famous; (b) hold Blair and its managing member, Daniel Shalom, in contempt of court; and (c) direct the escrow agent, Riverside Abstract LLC, to pay to Famous the money held in escrow, along with attorneys' fees and interest.

On November 15, 2016, the Bankruptcy Court (Garrity, *J.*) held the first of two hearings on Famous' motion.[3] *See* Nov. 15, 2016 Hr'g. Tr., Bankr. Dkt. 52 (the "2016 Hr'g. Tr."). At that hearing, upon the consent of the debtor, the Court reopened the case, which had been closed in June 2013. *Id.* at 3–4. The Court adjourned that hearing, however, to give Blair's counsel an opportunity to review the transcript of the August 29, 2012 hearing. 2016 Hr'g. Tr. at 9–10.

---

[3] Judge Garrity presided over the 2016 and 2017 proceedings in this matter because the matter was reassigned to him after Judge Peck retired.

On January 18, 2017, the Court reconvened the hearing. *See* Jan. 17, 2017 Hr'g. Tr., Bankr. Dkt. 89 (the "2017 Hr'g. Tr."). At that hearing, the Bankruptcy Court stated its view that the 2012 Order had been "clear on it's [sic] terms" as to Blair's obligations to Famous. *Id.* at 3. Specifically, the Court stated, that Order had required that "all creditors would be paid in the amounts set forth in the order within thirty days." *Id.* at 4. The Court concluded: "The order is clear and I'm going to direct the debtor to comply with it." *Id.* at 6. The Court further held Blair in contempt for its failure to have done so. *Id.* at 7, 24. The Court directed Blair to pay Famous the amount ($56,636.50) listed in the 2012 Order, plus interest and fees. *Id.* at 8. The Court directed that that interest be paid at "whatever their lien rate would be," rather than the federal court interest rate. *Id.* at 9; *see id.* at 24.

In a February 11, 2017 order, the Bankruptcy Court memorialized that ruling. *See* Bankr. Dkt. 70. It ordered Blair to "cause to be paid to Famous Restoration Inc. the sum of $83,351.86, consisting of $56,636.50 for the unpaid Mechanic's Lien escrowed with Riverside Abstract, LLC per the Dismissal Order, plus $26,715.36, for interest (at the statutory rate of 9%) from November 4, 2011 to and including January 31, 2017, plus $28,882.91 in attorneys fees and costs incurred in connection with prosecuting the Motion and Famous Restoration Inc.'s mechanic's lien foreclosure action." *Id.* ¶ 4.

### C. Blair's Appeal to This Court

On March 20, 2017, Blair filed its appeal to this Court. Dkt. 1. On March 23, 2017, Blair moved for a preliminary injunction staying the Bankruptcy Court's order pending appeal. Dkt. 4. The Court consolidated briefing on the preliminary injunction and the merits of the appeal, and, upon Famous's consent, *see* Declaration of Edward N. Gewirtz, Dkt. 6-4, ¶ 3, stayed

5

the order pending resolution of the appeal, Dkt. 8. The Court ordered Blair "to maintain the funds at issue in the Bankruptcy Court Order in escrow during the pendency of this appeal." *Id.*

## II. Applicable Legal Standards

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). It need not be established that the violation was willful. *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984). The same standards govern civil contempt in the bankruptcy courts. *See In re Lehman Bros. Holdings Inc.*, 526 B.R. 481, 496 (S.D.N.Y. 2014), *as corrected* (Dec. 29, 2014), *aff'd sub nom. In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016).

On appellate review, this Court may set aside a bankruptcy court's order holding a party in contempt "only for abuse of discretion," but such "review is more exacting than under the ordinary abuse-of-discretion standard because a [bankruptcy] court's contempt power is narrowly circumscribed." *In re Lehman Bros.*, 526 B.R. at 495–96 (internal quotation omitted). "An abuse of discretion occurs when a decision relies on an erroneous view of the law, when a decision relies on a clearly erroneous assessment of evidence, or when a decision otherwise 'cannot be located within the range of permissible decisions.'" *In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374, 380 (S.D.N.Y. 2011); *see In re Lehman Bros.*, 526 B.R. at 496.

## III. Analysis

The Bankruptcy Court imposed a contempt sanction on Blair for Blair's failure to pay $56,636.50 to Famous pursuant to the 2012 Order. While a violation of a clear command within

6

that Order could support contempt sanctions, the Court is constrained to reverse the Bankruptcy Court's contempt order because Judge Peck's 2012 Order did not unambiguously require that this payment be made *to Famous*, as opposed to being deposited in escrow. Rather, on its face, the Order is susceptible to two plausible interpretations. On one reading, the one adopted by the Bankruptcy Court in the 2017 hearing, the Order required Blair to "pay" money to Famous itself "within thirty days" of the Order. *See* 2012 Order at 2. On another reading, however, the Order can plausibly be read simply to require Blair to pay the designated sum "in accordance with the proposed schedule of payments" within 30 days. *Id.* And that schedule, in turn, classified the funds due Famous as "TO BE ESCROWED." *Id.*, Exh. A. Under this second reading, Blair was required merely to put into escrow within 30 days funds sufficient to satisfy Famous' mechanics' lien. And it appears undisputed that Blair did so.

To be sure, the first reading, urged by Famous and adopted by the Bankruptcy Court in 2017, is entirely plausible. The 2012 Order can reasonably be read to require outright payment of the listed sum to Famous. However, the second reading, urged by Blair, is defensible, too. Under it, the directive that Blair "pay" a sum to a creditor is modified by the qualifying clause that the payment be made "in full in accordance with the proposed schedule," which sorted the payment to Famous as one "TO BE ESCROWED." Indeed, Blair's reading makes sense of the "TO BE ESCROWED" schedule in the Dismissal Order, whereas the alternative reading—under which all amounts listed were to be paid directly to the listed creditor—would not readily explain this bifurcated treatment. As Blair notes, its reading is further made reasonable because directing that payments on Famous' behalf be placed in escrow would place Famous in the same situation it would have been in but for the bankruptcy proceeding: with the money secured in escrow while the validity of the mechanic's lien in favor of Famous was litigated in state court.

7

The Court therefore holds that, as to the discrete command at issue—regarding the manner in which Blair was to pay the $56,636.50 to Famous, *i.e.*, via a direct payment or by a deposit in escrow—the 2012 Order was ambiguous. As such, it is insufficiently clear to support a contempt sanction against Blair for noncompliance. *See, e.g., Perez v. Danbury Hosp.*, 347 F.3d 419, 424–25 (2d Cir. 2003) (reversing order of contempt because underlying order was ambiguous); *Hess v. N.J. Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988) (same); *United States v. O'Quinn*, 913 F.2d 221, 222 (5th Cir. 1990) (same).[4] The Court therefore vacates the Bankruptcy Court's contempt order.

In light of this ruling, the Court remands this matter to the Bankruptcy Court to enable it to bring the discrete dispute between the debtor, Blair, and its creditor, Famous, to an orderly and fair conclusion. The Bankruptcy Court is at liberty on remand to clarify its 2012 order insofar as it relates to the precise disposition of the $56,636.50, to expand upon that order in light of current circumstances, and to order all appropriate incidental relief. In addressing these matters, the Bankruptcy Court may wish to take into account any determinations by the Supreme Court of New York for the County of New York that have been made or are anticipated as to the validity *vel non* of Famous' mechanic's lien.

## CONCLUSION

For the reasons stated above, the Court vacates the Bankruptcy Court's order finding Blair in contempt for failure to make direct payment of $56,636.50 to Famous. The Court

---

[4] To the extent Famous seeks to defend the contempt sanction based on Blair's failure to file an affidavit of compliance, that argument is unpersuasive. To be sure, the 2012 Order of Dismissal appears to have required Blair to file an affidavit affirming either that it had (a) made payments to the creditors listed on the "to be paid" schedule; or (b) put into escrow sums sufficient to satisfy the creditors listed on the "to be escrowed" schedule; and Blair appears not to have done so. However, that lapse was not the basis on which the Bankruptcy Court, in 2017, imposed the contempt sanction.

8

remands this matter to the Bankruptcy Court for further proceedings consistent with this decision. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 5, 2017
       New York, New York